# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **Auto Telematics Ltd.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **Civil Action No. 6:22-CV-00474** |
| v. | § | |
| | § | |
| **United Services Automobile Association,** | § | **Jury Trial Demanded** |
| | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Auto Telematics Ltd. files this Original Complaint for patent infringement against Defendant United Services Automobile Association, alleging as follows:

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2.      Plaintiff **Auto Telematics Ltd. ("Auto Telematics" or "Plaintiff")** is a private limited company organized under the laws of the United Kingdom with a registered office address of 5 Driffield Terrace, York England, Y0241EJ.

3.      Upon information and belief, Defendant **United Services Automobile Association ("USAA" or "Defendant")** is a reciprocal interinsurance exchange and unincorporated association organized under the laws of the State of Texas with a principal place of business located in this judicial district at 9800 Fredericksburg Road, San Antonio, Texas 78288. On information and belief, Defendant does not maintain a registered agent for service, and may be served at its normal and customary place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

4.      On information and belief, USAA sells, offers to sell, and otherwise provides insurance products, including automobile insurance, to consumers throughout the State of Texas, including in this judicial District, and introduces such services into the stream of commerce knowing and intending that they would be extensively used in the State of Texas and in this judicial District. On information and belief, USAA specifically targets customers in the State of Texas and in this judicial District, including through its website at www.usaa.com and USAA mobile applications.

## JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

6.      USAA is subject to personal jurisdiction in this Court. In particular, this Court has personal jurisdiction over USAA because USAA has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing, offers to sell, and sales of products and services within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over USAA because USAA has committed acts giving rise to Plaintiff's claims for patent infringement within and directed to this District.

7.      Upon information and belief, USAA has committed acts of infringement in this District and has one or more regular and established places of business within this District under the language of 28 U.S.C. § 1400(b). Thus, venue is proper in this District under 28 U.S.C. § 1400(b).

8.     USAA maintains a permanent and physical presence within the Western District of Texas, conducting business from at least its location at 9800 Fredericksburg Road, San Antonio, Texas 78288.

9.     Upon information and belief, USAA has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by consumers in this forum; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial District.

10.     Upon information and belief, USAA has had and currently has customers of its property and casualty insurance products who are located in this judicial District.

11.     Upon information and belief, USAA has sold and sells automobile insurance policies to consumers who reside in this judicial District.

12.     Upon information and belief, USAA's individual consumer customers have used and are using USAA's SafePilot™ application for mobile devices in this judicial District.

13.     Upon information and belief, USAA hires and has hired claims adjusters for its insurance adjusters in and around Waco, Texas, which is in this judicial District.

14.     Upon information and belief, USAA maintains a financial center located at 2309 East Central Expressway, Suite 500, in Killeen, Texas.

15.     Upon information and belief, USAA services more than 25,000 customers within a five-mile radius of Fort Hood, which is located in the Waco Division of this judicial District.

16.     An article posted in the Fort Hood Herald states in part:

> The organization recently opened a financial center in Killeen at 2309 E. Central Expressway, Suite 500.
>
> There, members - more then 26,000 are in a five-mile radius of Fort Hood - can meet with representatives to discuss investments, get insurance quotes, apply for loans or receive financial advice on issues like retirement and college planning, according to information from USAA.

*See* Amanda Kim Stairrett, "USA financial center opens in Killeen," Fort Hood Herald (March 24, 2010, updated August 16, 2012), *available at* https://kdhnews.com/fort_hood/homefront/usaa-financial-center-opens-in-killeen/article_acbb5ffd-9490-5deb-8d8f-cf03fe509a37.html (last accessed February 28, 2022).

17.     Upon information and belief, one or more USAA customers within the Fort Hood area is a user of the SafePilot App.

18.     Upon information and belief, USAA employees in the Dallas-Fort Worth area are integral to the design and development of the SafePilot system, including the SafePilot App.

19.     An article posted to DallasInnovates.com states in part:

> **USAA Plano Team Integral**
>
> Integral in developing telematics enabled auto claims is USAA's design and information technology team in Plano, he added.
>
> "Our user-centered design team … meets with members, they run pilots for us, they do the design work, to make sure that is as user-friendly, and as member-centric as possible," Burgess said.
>
> "We also have our IT teams up there that are connected in our user design teams," he said. "So it's a really nice mix in the Plano area, where we have experience-led team IT teams, connected to make rapid changes in the SafePilot app."

*See* David Moore, "USAA SafePilot App 'Learns' to Record Crash Data," Dallas Innovates (November 12, 2020), *available at* https://dallasinnovates.com/usaas-safepilot-app-learns-to-record-crash-data/ (last accessed February 23, 2022).

20.     The quote in the article cited in paragraph 19 above is from Sean Burgess, chief claims officer and Senior Vice President at USAA.

21.     Upon information and belief, Jeffrey Morgan is a Director of Information Technology at USAA.

22.     Upon information and belief, Mr. Morgan works in USAA's offices in the Dallas-Fort Worth area.

23.     Mr. Morgan's LinkedIn profile states in part:



**USAA**
11 yrs 2 mos

**Director, Information Technology - P&C Telematics and Connected Car Platform**
Sep 2020 – Present · 1 yr 6 mos
Plano, Texas, United States

● Led 2.0 rollout of USAA SafePilot Mobile App from 4 states to 35 states
● Established BBI Telematics Change Release Group to move Telematics are closer to a Release When Ready cadence
● Facilitated Plano P&C Developer Forum to help P&C Developers network across different Lines of Business
● Completed biweekly 1 on 1s and quarterly check-ins with all Full Time Employees
● Coordinated delivery schedules with business partners through SAFe methodology
● Forecasted resources growth and development for P&C New Products Department
● Prioritized injects with business partners to streamline new work coming through SAFe pipeline
● Frequently met with Telematics vendor to establish open lines of communication and reach consensus on timing of releases and hot fixes

*See* Jeffrey Morgan, LinkedIn Profile, *available at* https://www.linkedin.com/in/jeffrey-morgan-4bab5b66/ (last accessed February 28, 2022).

24.     Upon information and belief, Mr. Morgan was directly involved in designing, developing, updating, modifying, and/or implementing the SafePilot System, including the SafePilot App.

25. Upon information and belief, Michael Allen was an IT Technical Director in Software Engineering and IoT Connected Platform for USAA from approximately 2015 to 2020.

26. Upon information and belief, Mr. Allen worked in USAA's offices in the Dallas-Fort Worth area.

27. Mr. Allen's LinkedIn profile states in part:



### Experience

**IT Technical Director, Software Engineering & IoT Connected Platform**
USAA
2015 - 2020 · 5 yrs

• Transformed the organization by infusing a culture of operational excellence through the adoption of engineering practices hyper focused on delivering high quality products that meet regulatory compliance controls while leveraging SAFe Agile framework, XP practices, and DevOps.
• Strengthened the overall organization through high performing talent acquisition and talent management while effectively managing $20M in operating budget
• Pioneered Software Engineering practices to drive consistent velocity and quality time to market that have been embraced as the basis of the broader organizations blueprint for TDD and DevOps CI/CD deploy when ready capability.
• Accelerated the delivery of USAA's SafePilot Mobile Telematics, IoT Connected Platform, Android and IOS solution to market exceeding member, customer and business expectations. The solution was first to market as a safe driving discount offering exceeding member/customer growth forecast by 35% and Cost Benefit projections by 20%
• Collaborated with Platform Infrastructure and Enterprise architecture to validate new PaaS, Messaging, and Security capabilities.
• Partnered with IT Training an external training provider to benchmark and evolve software engineering TDD curriculum and assessments to better align with organization transformation and strategic objectives.

*See* Michael Allen, LinkedIn Profile, *available at* https://www.linkedin.com/in/smichael-allen/ (last accessed February 28, 2022).

28. Upon information and belief, Mr. Allen was directly involved in designing, developing, updating, modifying, and/or implementing the SafePilot System, including the SafePilot App.

29. Upon information and belief, Konrad Ryce is a Software Engineer at USAA.

30.     Upon information and belief, Mr. Ryce works in USAA's offices in the Dallas-Fort Worth area.

31.     Mr. Ryce's LinkedIn profile states in part:



**Software Engineer**
USAA
Jul 2018 – Dec 2021 · 3 yrs 6 mos

Helped develop and deliver two different products for the Property & Casualty Auto space. The first project is the USAA SafePilot telematics solution and the second project is a document generation system. Tools utilized on these projects included but were not limited to Java, Kafka, Docker, Kubernetes, and GitLab.

*See* Konrad Ryce, LinkedIn Profile, *available at* https://www.linkedin.com/in/konrad-ryce-852138102/ (last accessed February 28, 2022).

32.     Upon information and belief, Mr. Ryce was directly involved in designing, developing, updating, modifying, and/or implementing the SafePilot System, including the SafePilot App.

33.     Upon information and belief, Paul Eubanks is an IT Director at USAA in P&C Insurance Communication Systems.

34.     Upon information and belief, Mr. Eubanks works in USAA's offices in the Dallas-Fort Worth area.

35.     Mr. Eubanks's LinkedIn Profile states in part:

**Director of IT - Auto Insurance**

Nov 2018 - Oct 2019 · 1 yr

Plano, Tx

Paul started a leader of leaders role - leading the Auto Insurance program in Plano. In this role Paul had responsibilities for several key application initiatives including Auto Document Modernization, Behavior Based Insurance (BBI), and Auto Innovation. Accomplishments for this role included: Delivering key business capabilities - rolling out USAA's BBI program (SafePilot) to several states while maintaining exceptional quality against an aggressive timeline. Modernizing P&C communication infrastructure and tooling to accelerate delivery of our modernized document capabilities to stateside locations (CI/CD, DevOps, release when ready). Executed vision and strategic plan to re-org and create a more effective organization focused on a SAFe value stream around P&C Insurance Communication Systems. Additionally, Paul is the Plano P&C Site Lead. As the site lead, Paul is responsible for being the locations voice and advocate for location specific initiatives, opportunities and challenges; driving collaboration and engagement across Plano P&C to accomplish more as a team then individually; ensuring and setting when necessary strategic alignment to key IT outcomes; shaping office culture.

*See* Paul Eubanks, LinkedIn Profile, *available at* https://www.linkedin.com/in/pauleubanks2003/ (last accessed February 28, 2022).

36.     Upon information and belief, Mr. Eubanks was directly involved in designing, developing, updating, modifying, and/or implementing the SafePilot System, including the SafePilot App.

37.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

## THE PATENTS-IN-SUIT

38.     This cause of action asserts infringement of United States Patent No. 9,311,271 ("the '271 Patent"), United States Patent No. 9,633,487 ("the '487 Patent), United States Patent No. 10,192,369 ("the '369 Patent"), and United States Patent No. 10,198,879 ("the '879 Patent") (collectively, the "Patents-in-Suit").

39.     The '271 Patent, entitled "Method and System for Logging Vehicle Behavior," duly and legally issued on April 12, 2016, from U.S. Patent Application No. 13/994,455, filed on July 24, 2013, naming Andrew William Wright as the sole inventor. The '271 Patent claims priority to

PCT Application No. PCT/GB2011/052492, filed on December 15, 2011. A true and correct copy of the '271 Patent is attached hereto as **Exhibit 1** and is incorporated by reference.

40.     The '271 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 60–65.

41.     Plaintiff Auto Telematics is the owner and assignee of all rights, title, and interest in and under the '271 Patent.

42.     Auto Telematics has standing to sue for infringement of the '271 Patent.

43.     The '487 Patent, entitled "Method and System for Logging Vehicle Behavior," duly and legally issued on April 25, 2017, from U.S. Patent Application No. 15/061,910, filed on March 4, 2016, naming Andrew William Wright as the sole inventor. The '487 Patent is a continuation of the '271 Patent and also claims priority to PCT Application No. PCT/GB2011/052492, filed on December 15, 2011. A true and correct copy of the '487 Patent is attached hereto as **Exhibit 2** and is incorporated by reference.

44.     The '487 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 60–65.

45.     Plaintiff Auto Telematics is the owner and assignee of all rights, title, and interest in and under the '487 Patent.

46.     Auto Telematics has standing to sue for infringement of the '487 Patent.

47.     The '369 Patent, entitled "Method and System for Logging Vehicle Behavior," duly and legally issued on January 29, 2019, from U.S. Patent Application No. 15/454,937, filed on March 9, 2017, naming Andrew William Wright as the sole inventor. The '369 Patent is a continuation of the '487 Patent and also claims priority to PCT Application No.

PCT/GB2011/052492, filed on December 15, 2011. A true and correct copy of the '369 Patent is attached hereto as **Exhibit 3** and is incorporated by reference.

48.     The '369 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 60–65.

49.     Plaintiff Auto Telematics is the owner and assignee of all rights, title, and interest in and under the '369 Patent.

50.     Auto Telematics has standing to sue for infringement of the '369 Patent.

51.     The '879 Patent, entitled "Method and System for Logging Vehicle Behavior," duly and legally issued on February 5, 2019, from U.S. Patent Application No. 15/454,952, filed on March 9, 2017, naming Andrew William Wright as the sole inventor. The '879 Patent is a continuation of the '487 Patent and also claims priority to PCT Application No. PCT/GB2011/052492, filed on December 15, 2011. A true and correct copy of the '879 Patent is attached hereto as **Exhibit 4** and is incorporated by reference.

52.     The '879 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 60–65.

53.     Plaintiff Auto Telematics is the owner and assignee of all rights, title, and interest in and under the '879 Patent.

54.     Auto Telematics has standing to sue for infringement of the '879 Patent.

55.     The Patents-in-Suit generally relate to the use of a mobile telecommunications device—such as a cellular telephone—to monitor and record data during a driving period and to report that data to a central system.

56.     The inventor, Mr. Wright, conceived of the inventions after watching a dispute regarding the cause of a minor traffic accident in U.K. County Court in 2010. Mr. Wright

conceived of the idea of creating an application to run on a smartphone that would record a user's vehicle journey in a rolling loop while also recording information such as time of day, speed, GPS positioning, etc. The information could later be used to reconstruct the vehicle's trip to assist in determining the cause of a crash, for example. Mr. Wright believed that using a mobile device's sensors (rather than the vehicle's sensors) would be better because it would require virtually zero cost to install and because it would yield better accuracy and reliability due to the technical limitations inherent in most vehicles.

57.     Mr. Wright's conception led to the development of a new application called "Witness." The app allowed recording of additional aspects of a driving period, which would be recorded in a rolling loop and uploaded to a central server. The original app was, for a time, a top-selling app in the travel section of one or more mobile app stores for several countries. The Witness app was later replaced by Witness Pro. Mr. Wright considered the app to be a valuable tool for use in the insurance industry, as it would allow for monitoring of an individual's driving habits and, consequently, relative risk of being involved in a costly accident.

58.     While Mr. Wright's concept was received favorably by several insurance companies, none agreed to pilot the Witness Pro app. Eventually, the growing cost of maintaining Witness Pro without investment and increasing competition forced the closure of the business. Within a year or two after Mr. Wright closed the business, however, insurance companies began launching their own telematics applications that incorporate technology described and claimed in the Patents-in-Suit.

59.     The Patents-in-Suit describe and claim the core components of the telematics systems that many insurance companies—including USAA—use to monitor driving performance and offer premium adjustments based on an individual's particular driving record.

60.     The Patents-in-Suit describe and claim eligible subject matter under 35 U.S.C. § 101. They describe and claim specialized sensors such as an image sensor, audio sensor, accelerometer, and positioning module. *See, e.g.*, '271 Patent at 1:63–64, Claim 1. The system uses this data to "register the start of a driving period during which [a] mobile device is installed to [a] vehicle [while] the vehicle is driven by a driver; process [this] sensor data from the sensor set during the driving period to derive driving information associated with how the vehicle is driven; and store a selection of the driving information . . . ." *See* '271 Patent at 2:3–9.

61.     The Patents-in-Suit discuss the "sensor set" used to collect driver data, describing how an accelerometer may be used to measure accurate acceleration of a vehicle, how an image sensor may be used to capture video footage of the road, and how a unique initialization process may be used to register the start of a driving period. *See, e.g.*, '271 Patent at 3:2–8, 3:30–32. As the Patents-in-Suit describe:

> The initialisation input may be generated automatically in response to the sensor data having predetermined values. For example, if the sensor data reflects a detected speed above a predetermined threshold—for example, 20 kilometers per hour—then this can be used to trigger the start of the driving period. Similarly, if the sensor data reflects that the mobile device is held securely to the vehicle in a predetermined position (for example, via the adapter) this can also be used to trigger the start of the driving period. To this end, the adapter and/or the mobile device may comprise a registration module configured to register the installation of the mobile device to the vehicle and/or the adapter. The registration module may comprise a proximity sensor to detect the proximity of the mobile device to the vehicle. The registration module may comprise a NFC (near field communication) device. The registration module may be arranged to determine a match between the location of the mobile device and the location of the vehicle. The match may be performed by receiving and comparing a first positioning input associated with the position of the vehicle and a second positioning input associated with the position of the mobile device.

'271 Patent at 3:30–54.

62.     The Patents-in-Suit also describe the ability to manage voice calls to the mobile device by, for example, temporarily disabling or diverting incoming calls during a registered

driving period or based on the speed and location of the vehicle. *See, e.g.*, '271 Patent at 3:55–59, 4:23–28.

63.　The Patents-in-Suit also describe the use of sensors to detect the occurrence of a predetermined event (*e.g.*, accident, hard braking, sharp turn, etc.) and store driving information associated with such event to the device's memory. *See, e.g.*, '271 Patent at 5:3–10. As the specifications describe, detection of a predetermined event may involve correlating sensor data and comparing it against an event indication model and/or against data that has been generated and recorded over time. *See, e.g.*, '271 Patent at 5:20–40.

64.　The Patents-in-Suit also describe the use of a GPS to register a vehicle's position. *See, e.g.*, '271 Patent at 8:66. The positioning module may be used to determine the speed of the vehicle as well as latitude, longitude, elevation, and other location data. *See id.* at 9:5–10. An orientation sensor may also be used to augment the data of the positioning module. *See, e.g.*, *id.* at 9:11–17.

65.　The claims of the Patents-in-Suit are directed to the inventive combination of multiple sensors to track and determine attributes of individual driving sessions to assess tendencies and characteristics of individual drivers. The claimed inventions allow insurers, fleet operators, drive-share companies, and others to analyze the tendencies and characteristics of drivers and driving sessions and to use the collected data to, *inter alia*, offer new and innovative user-based insurance products, limit liability, reduce worker compensation claims, and strengthen goodwill.

66.　The claims of the Patents-in-Suit improve the functioning of traditional telematics systems and traditional driver monitoring systems, including those used by insurance companies. For example and without limitation, the use of a mobile telecommunication device's sensors

(rather than the vehicle's sensors) to collect driver data is an improvement over the prior art that was not well-understood, routine, or conventional at the time. Use of mobile telecommunication devices to capture sensor data that is then used in the calculation of a driving score improves the overall performance and efficiency of the data-logging systems used to log driving information.

67.     USAA has not obtained a license to any of the Patents-in-Suit.

68.     USAA does not have Auto Telematics's permission to make, use, sell, offer to sell, or import products that are covered by one or more claims of the Patents-in-Suit or to perform any methods claimed in the Patents-in-Suit.

69.     USAA needs to obtain a license to the Patents-in-Suit and cease its ongoing infringement of Auto Telematics's patent rights.

## GENERAL ALLEGATIONS

70.     Upon information and belief, USAA makes, uses, sells, offers to sell, and/or imports into the United States methods and systems for logging vehicle behavior as claimed in each of the Patents-in-Suit. For example, and without limitation, USAA provides for its insurance customers the USAA SafePilot™ application for mobile devices ("SafePilot App").

71.     The SafePilot App is available for both iOS and Android devices:



Download the USAA SafePilot App

The USAA SafePilot App shows you how well you're driving and how you can improve. It's a free app available for iOS and Android.

*Source: usaa.com/insurance/safedriving?akredirect=true*

72.    According to USAA, the SafePilot App automatically logs and scores users' driving information, including without initiation from the user:

**Start Driving**

We'll automatically log and score your trips. You don't need to turn on the app every time you drive.

*Source: usaa.com/insurance/safedriving?akredirect=true*

73.    The USAA website illustrates the following "Features of the App":



*Source: usaa.com/insurance/safedriving?akredirect=true*



*Source: usaa.com/insurance/safedriving?akredirect=true*

74. The USAA webpage includes the following information under the "Driving Information" category in the FAQ tab:

— **What driving information does the USAA SafePilot App collect?**

The USAA SafePilot App runs in the background and gathers details about each trip you take, including:

- Location
- Time of day
- If you're the passenger or driver
- Phone Handling
- Hand-held Calling
- Hands-free Calling
- Harsh Braking
- Annualized Hours Driven

We take your privacy seriously and will never share your driving information.

— **How is my USAA SafePilot App driving information used?**

Your USAA SafePilot App driving information will be used to calculate a driving score and any potential discounts you may receive on your auto insurance policy. It won't be used to evaluate your insurability or increase your premium, although your discount may vary over the life of your policy.

— **Does USAA share my USAA SafePilot App driving information?**

No, except as necessary for the administration of the USAA SafePilot program, we will never share your driving information with third-party or marketing companies. Review the USAA SafePilot Program Terms and Conditions for more details on what driving information is collected by the USAA SafePilot App and how it is used.

*Source: usaa.com/insurance/safedriving?akredirect=true*

75.     The USAA webpage includes the following information under the "Discount and Premium" category in the FAQ tab:

— **How is my earned discount calculated?**

We base your earned discount on your driving score, which you'll see in the USAA SafePilot App. This driving score will factor how often you handle your phone while driving, if you're making hands-free calls, if you brake harshly and how much you drive. While we understand that some defensive driving situations may require you to brake, try to keep erratic driving to a minimum to earn the highest possible discount.

**If there are multiple drivers on your policy,** we'll base your household earned discount on the driving behaviour of all drivers enrolled in USAA SafePilot. The highest possible discount you may earn depends on how many eligible drivers are participating in the program. We recommend that all eligible drivers participate in the program.

— **When will I receive my discount?**

After you enroll in the USAA SafePilot program, we'll apply a participation discount of up to 10% to your auto insurance policy.

Before your policy renews, we'll use your household's trip data to determine which drivers have met the requirements for an earned discount.

We'll apply the earned discount from these drivers to your policy's next term at renewal and remove their participation discount. The policy term's effective date is referenced in the USAA SafePilot App on the discount tab.

— **What if I change my mind and don't want to participate?**

That's OK. You can cancel your enrollment in the program any time.

— **Will my driving information impact my insurance rates?**

No. We will only use your driving information to calculate your discount. Your driving information won't have an impact on your auto insurance policy rate, although your rate may vary based on other factors.

*Source: usaa.com/insurance/safedriving?akredirect=true*

76.     The USAA webpage includes the following information under the "Crash Detection" category in the FAQ tab:

— **What is crash detection?**

Your safety is our top priority. If the app detects a potential collision, we'll reach out to make sure you're OK and provide options for quick claim filing. If needed, you'll be able to dial 911 directly from the app.

— **How does the app detect a collision?**

Crash detection uses a proprietary algorithm and your device's GPS, barometer, accelerometer, gyroscope and other sensors to identify a potential collision.

— **What happens when the app detects a collision?**

As long as you enable notifications, the app will send you a push notification if it detects a potential collision. We'll want to make sure you're OK and provide options for quick claim filing.

— **Will crash detection affect my driving score and discount?**

Your score and discount won't be affected if the app detects a collision.

*Source: usaa.com/insurance/safedriving?akredirect=true*

77.     According to USAA, the SafePilot program is currently available in all U.S. locations except California, Delaware, Indiana, Massachusetts, New Jersey, New York, North Carolina, Vermont, and Wisconsin, and is not currently available in U.S. territories or internationally:



*Source: usaa.com/insurance/safedriving?akredirect=true*

Thus, the SafePilot program is being offered and is available in the State of Texas and this judicial District.

78.     USAA has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the SafePilot program, including the SafePilot App.

79.     Auto Telematics has been and continues to be damaged as a result of USAA's infringing conduct. USAA is therefore liable to Auto Telematics in an amount that adequately compensates Auto Telematics for USAA's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

80.     Additionally, upon information and belief, USAA markets, sells, and/or uses other products and services that are not covered by the claims of the Patents-in-Suit but that are used or

offered with the SafePilot program and/or that benefit USAA in ways at least attributable in part to the SafePilot program. Accordingly, Auto Telematics is entitled to collect damages from USAA for convoyed sales of certain non-patented products and services.

81.     USAA failed to obtain permission from Auto Telematics to make, use, sell, offer to sell, and/or import products or services incorporating the inventions claimed in the Patents-in-Suit.

82.     For each count of infringement listed below, Auto Telematics incorporates and restates the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '271 PATENT

83.     Auto Telematics incorporates by reference the allegations made in paragraphs 1–82.

84.     USAA has been and is now directly infringing the '271 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by and/or that practice the methods described in one or more claims of the '271 Patent, including but not limited to Claims 1 and 6.

85.     For example, the USAA SafePilot App uses a customer's mobile telecommunications device and configures it to log driving information associated with a vehicle, as described in Claim 1 of the '271 Patent.

86.     Additionally, for example, USAA maintains a data-logging system for logging driving information received from its customers' remote mobile telecommunications devices that run the SafePilot App, as described in Claim 6 of the '271 Patent.

87.     An exemplary claim chart comparing USAA's infringing systems/methods to one or more claims of the '271 Patent is attached as **Exhibit 5** and is incorporated by reference as if fully set forth herein.

88.     As a result of USAA's infringement of the '271 Patent, Auto Telematics has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF THE '487 PATENT

89.     Auto Telematics incorporates by reference the allegations made in paragraphs 1–82.

90.     USAA has been and is now directly infringing the '487 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by and/or that practice the methods described in one or more claims of the '487 Patent, including but not limited to Claim 1.

91.     For example, the USAA SafePilot App uses a customer's mobile telecommunications device and configures it to log driving information associated with a vehicle, as described in Claim 1 of the '487 Patent.

92.     An exemplary claim chart comparing USAA's infringing systems/methods to one or more claims of the '487 Patent is attached as **Exhibit 6** and is incorporated by reference as if fully set forth herein.

93.     As a result of USAA's infringement of the '487 Patent, Auto Telematics has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF THE '369 PATENT

94.     Auto Telematics incorporates by reference the allegations made in paragraphs 1–82.

95.     USAA has been and is now directly infringing the '369 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by and/or that practice the methods described in one or more claims of the '369 Patent, including but not limited to Claim 1.

96.     For example, the USAA SafePilot App uses a customer's mobile telecommunications device and configures it to log driving information associated with a vehicle, as described in Claim 1 of the '369 Patent.

97.     An exemplary claim chart comparing USAA's infringing systems/methods to one or more claims of the '369 Patent is attached as **Exhibit 7** and is incorporated by reference as if fully set forth herein.

98.     As a result of USAA's infringement of the '369 Patent, Auto Telematics has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT IV – INFRINGEMENT OF THE '879 PATENT

99.     Auto Telematics incorporates by reference the allegations made in paragraphs 1–82.

100.    USAA has been and is now directly infringing the '879 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products that are covered by and/or that practice the methods described in one or more claims of the '879 Patent, including but not limited to Claims 1 and 21.

101.    For example, the USAA SafePilot App uses a customer's mobile telecommunications device and configures it to log driving information associated with a vehicle, as described in Claim 1 of the '879 Patent.

102.    Additionally, for example, the USAA SafePilot App constitutes a non-transitory computer readable medium having instructions comprising a software application stored thereon, wherein the instructions are configured to be executed on a processor of a customer's mobile telecommunications device to enable the mobile telecommunications device to log driving information associated with a driver of a vehicle, as described in Claim 21 of the '879 Patent.

103.    An exemplary claim chart comparing USAA's infringing systems/methods to one or more claims of the '879 Patent is attached as **Exhibit 8** and is incorporated by reference as if fully set forth herein.

104.    As a result of USAA's infringement of the '879 Patent, Auto Telematics has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## DEMAND FOR A JURY TRIAL

105.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Auto Telematics demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

106.    WHEREFORE, Auto Telematics respectfully requests that this Court enter judgment in its favor and grant the following relief:

    a.      A judgment that USAA has directly infringed one or more claims of each of the Patents-in-Suit;

    b.      A judgment and order requiring USAA to pay Auto Telematics past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from

any continuing post-verdict infringement for the time between trial and entry of the final

judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

      c.      A judgment and order requiring USAA to pay Auto Telematics reasonable

ongoing royalties on a going-forward basis after final judgment;

      d.      A judgment and order requiring USAA to pay Auto Telematics pre-

judgment and post-judgment interest on the damages award;

      e.      A judgment and order requiring USAA to pay Auto Telematics's costs; and

      f.      Such other and further relief as the Court may deem just and proper.


Dated: May 11, 2022                    Respectfully submitted,

_____
**ANTHONY K. BRUSTER**
State Bar No. 24036280
*Lead Attorney*
**SHAWN A. LATCHFORD**
State Bar No. 24066603
**ANDREW J. WRIGHT**
State Bar No. 24063927
**BRUSTER PLLC**
680 North Carroll Avenue, Suite 110
Southlake, Texas 76092
817.601.9564 (telephone)
akbruster@brusterpllc.com
shawn@brusterpllc.com
andrew@brusterpllc.com

**MICHAEL B. ANGELOVICH**
State Bar No. 00785666
**NICHOLAS A. WYSS**
State Bar No. 24071459
**NIX PATTERSON LLP**
3600 North Capital of Texas Highway

Suite B350
Austin, Texas 78746
512.328.5333 (telephone)
mangelovich@nixlaw.com
nwyss@nixlaw.com

**STEVEN E. TILLER**
*Pro hac vice application to be filed*
**GREGORY M. STONE**
*Pro hac vice application to be filed*
**WHITEFORD TAYLOR PRESTON LLP**
Seven St. Paul Street
Baltimore, Maryland 21202
410.347.8700 (telephone)
stiller@wtplaw.com
gstone@wtplaw.com


**KARL RUPP**
State Bar No. 24035243
**SOREY & HOOVER, LLP**
100 N. 6th Street, Suite 502
Waco, TX 76701
903.230.5600 (telephone)
krupp@soreylaw.com
**COUNSEL FOR PLAINTIFF**
**AUTO TELEMATICS LTD.**